IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:10-cr-00015 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| LORIE ANN TAYLOR KELLER ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Lorie Ann Taylor Keller, proceeding *pro se*, filed a motion for compassionate release. (Dkt. No. 410.) Pursuant to Standing Order 2019-1, the court appointed the Federal Public Defender to represent Keller, but it moved to withdraw and to appoint alternate counsel. (Dkt. No. 417.) New counsel was appointed but declined to supplement the motion. (Dkt. No. 423.) The government opposes the motion. (Dkt. No. 424.)

The court finds that a hearing is not necessary to resolve this motion, which will be denied for the reasons stated below.

I. BACKGROUND

In 2010, Keller was charged with traveling across state lines to kill her former spouse. In 2012, she pleaded guilty to conspiracy to commit interstate violence, conspiracy to use a firearm in relation to a crime of violence, conspiracy to kill witnesses (resulting in their deaths), conspiracy to tamper with witnesses, conspiracy to tamper with evidence, conspiracy to use fire to commit a felony, interstate domestic violence, carry and use a firearm in relation to a crime of violence causing death by murder during the course of the violation, murdering a witness, use of a firearm in relation to a crime of violation causing death by murder during the course of the violation, tampering with a witness, tampering with evidence, and use of fire during the commission of a felony.

Keller signed a statement of facts in which she admitted to murdering three people, including a five-year old girl. (Dkt. No. 239.) According to the statement, Keller had an acrimonious divorce with her ex-husband, Dennis Taylor. Lorie Ann and her new husband, co-defendant Nakia Keller, planned to kill Dennis. They purchased a firearm and engaged in target practice and then carried out their plan to murder Dennis and leave no witnesses. They drove from Virginia to West Virginia and shot and killed Dennis, Dennis' new wife Allaina, and Allaina's five-year old daughter. Nakia and Lorie Ann set fire to the residence in an attempt to conceal their crimes. They also discarded evidence on the roadside and used a saw to cut the murder weapon into pieces.

On September 7, 2012, Keller was sentenced to four concurrent life sentences, plus three additional consecutive life terms. (Dkt. No. 254.) A motion to vacate the sentence under 28 U.S.C. § 2255, claiming ineffective assistance of counsel, was denied. (Dkt. Nos. 288 and 301.)[1]

On November 4, 2020, Keller submitted a request for compassionate release to the Federal Bureau of Prisons, which request was denied by the warden at FCI Hazelton on December 4, 2020.

In her pro se motion for compassionate release, Keller states that she seeks to reduce the three § 924(c) sentences (counts eight, ten, and twelve), for which she received three consecutive life sentences, to a single penalty. Count 8 charged her with carrying and using a firearm in relation to a crime of violence, interstate domestic violence, regarding the murder of Dennis Taylor. Count 10 charged her with use of a firearm in relation to a crime of violence regarding the murder of a witness, Taylor's wife, and Count 12 charges her with the same regarding the

---

[1] The court does not construe the instant motion as a § 2255 motion and notes the government's position that *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), was wrongly decided because nonretroactive statutory changes to sentencing laws should not form the basis for compassionate release. The court need not address this issue here.

2

murder of the child. All of these counts were in violation of 18 U.S.C. §§ 924(c) and 924(j)(1). Keller acknowledges that she will still have an extraordinarily long sentence, but she states that she is working to better herself and her circumstances.

## II. ANALYSIS

**A. Compassionate Release Under the First Step Act**

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .;

Thus, after considering any applicable § 3553(a) factors, if the court finds extraordinary and compelling reasons warrant a reduction and if it finds a reduction consistent with any applicable Sentencing Commission policy statements, it may reduce a term of imprisonment. However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants [rather than motions filed by BOP] under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). *See also United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022).

3

The court, may, nonetheless, look to U.S.S.G. § 1B1.13 for guidance. *McCoy*, 981 F.3d at 282 n.7.

The Application Notes to the applicable policy statement, U.S.S.G. § 1B1.13, lists as reasons the medical condition of the defendant, age of the defendant, family circumstances, and "an extraordinary and compelling reason other than, or in combination with" these reasons as justification for a reduction in sentence. Because there is no policy statement regarding motions filed by defendants under the recently amended § 3582(c)(1)(A), a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)).

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *See Hargrove,* 30 F. 4th at 195 (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release."); *United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019). *See also United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t).

### B. Exhaustion

While the First Step Act amended § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute still includes an exhaustion requirement. More than thirty days have passed since Keller submitted her request to the BOP. The government does not contest exhaustion. Therefore, the court finds that Keller has exhausted her administrative remedies. *See, e.g.*, *United States v. Allen*, Criminal No. RDB-14-0411, 2020 WL 3868999, at *2 (D. Md. July 9, 2020) (finding exhaustion requirement satisfied where thirty days have expired since submission of administrative request).

### C. Extraordinary and Compelling Reasons

As noted above, the court may consider any extraordinary and compelling reason when deciding to grant a motion filed under § 3582(c)(1)(A). Even so, the court struggles to find adequate justification when the relief requested would not result in an earlier release from prison than was contemplated at sentencing. If the court were to reduce the three § 924(c) life sentences to one, or order that they be served concurrently, the sentences would still be consecutive to four more concurrent life sentences. Such a scenario is not consistent with § 1B1.3, which contemplates the *early release* of elderly prisoners, prisoners with family or medical issues, or other prisoners presenting extraordinary and compelling reasons for early release. *See* Application Notes 1(A), 1(B), 1(C), and 1(D). "The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

Keller relies on the Fourth Circuit's decision in *McCoy*. In *McCoy*, the defendants' sentences for firearms violations under § 924(c) were "stacked," which exposed them to additional mandatory minimums and led to sentences ranging from 35 to 53 years of imprisonment. 981 F.3d at 274. After the convictions became final, Congress ended sentence stacking under § 924(c) by passing the First Step Act. *Id.* The court found no error in a court's "reliance on the length of the defendants' sentences, and the dramatic degree to which they exceed what Congress now deems appropriate, in finding 'extraordinary and compelling reasons' for potential sentence reductions." *Id.* at 288.

Unlike *McCoy*, there has been no change in the sentencing law under which Keller was sentenced. Keller was sentenced under § 924(j)(1), which provides that a person who commits murder in the course of violating § 924(c) shall be punished by death or life imprisonment. The punishment for committing murder during a § 924(c) violation was not changed by the First Step Act. Therefore, Keller's § 924(c) life sentences do not exceed what Congress now deems appropriate and is not an extraordinary and compelling reason for reducing Keller's sentence.

**D.  Section 3553(a) Factors**

The relevant § 3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The court considers these factors holistically, and no one factor is dispositive. *United States v. Kibble*, No. 20-7009, 2021 WL 1216543, at *4 (4th Cir. April 1, 2021).

The crimes committed by Keller are heinous, and she is clearly a danger to the community. Any reduction in her sentence—even if the reduction does not functionally reduce the amount of time Keller will spend in prison—would undermine the purposes of sentencing.

### III.  CONCLUSION

Based on the foregoing, Keller's motion to reduce her sentence (Dkt. No. 410) is DENIED. The clerk of court is directed to send a copy of the order to Keller and to all counsel of record.

Entered: May 23, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge